UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD WHEELER,<br><br>         Plaintiff,<br><br>    v.<br><br>M. HODGES, et al.,<br><br>         Defendants. | No.  2:13-cv-2526 MCE KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

    Plaintiff is a state prisoner, proceeding pro se, with a civil rights action pursuant to 42 U.S.C. § 1983.  Defendants' motion for summary judgment is before the court.  As set forth more fully below, the undersigned recommends that defendants' motion be granted.

II. Background

    Plaintiff is serving a sentence of life with the possibility of parole based on his conviction for robbery and kidnap for the purpose of robbery.  On November 16, 2015, defendants moved for summary judgment; plaintiff filed an opposition, and defendants filed a reply.

III. Plaintiff's Claims

    In his verified second amended complaint, plaintiff claims that on January 23, 2012, he received a rules violation report ("RVR"), Log #12-03-35-P-4, for introduction of dangerous contraband to a state prison -- possession of cell phones.  He was found guilty of the RVR and

1

assessed a 90 day loss of credit.  Plaintiff alleges that defendants Vivero and Cano violated plaintiff's procedural due process rights in connection with the RVR hearing held on April 3, 2012:  defendant Cano allegedly failed to provide assistance as a staff assistant in preparation for and during the RVR hearing, as evidenced by his signing the form that he offered assistance, but the signature dates occurred before the RVR hearing took place.  Plaintiff also argues that these dates demonstrate that plaintiff was deprived of staff assistance "24 hours prior to the hearing." (ECF No. 14 at 4.)  Plaintiff alleges that defendant Vivero denied plaintiff the right to call witnesses.  Plaintiff sought to call officer J. Languerand, who would testify that he inventoried the package but did not acknowledge any contraband.  Officer T. Harper would be called because he authored the RVR stating that he found contraband in the package.  Plaintiff argues that because he could not call Languerand, he could not present a legitimate defense showing this discrepancy in reporting the contents of the package.  Plaintiff also sought to call Captain A. Rodriguez "to make clear that it is mandatory to clear certain actions relating to searches with a captain or above." (ECF No. 14 at 4.)  Plaintiff seeks a new prison disciplinary hearing, a new parole consideration hearing, and money damages.  (ECF No. 14 at 5.)

IV.  Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P.

56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on November 16, 2015, (ECF No. 47), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. Facts[1]

On January 23, 2012, Deuel Vocational Institution ("DVI") Receiving and Release ("R&R") staff contacted institutional security ("ISU") concerning a suspicious package received by R&R, and addressed to plaintiff, inmate Reginald Wheeler, C-52713. Officer T. Harper searched the contents of the suspicious package and found within the suspicious package, one typewriter with plaintiff's name and CDCR identification number etched into its back, and eleven soup packets. Further, Officer Harper discovered, secreted in the typewriter, four cellular phones with chargers, and inside eight of the soup packets, approximately 600 grams of tobacco, all of

---

[1] For purposes of the pending motion, the following facts are found undisputed, unless otherwise indicated.

4

which are considered unauthorized contraband under prison regulations.

DVI R&R Officer Languerand prepared a "Mainline -- Personal Property Inventory Sheet -- Arrival," inventorying the personal property items in the package, which consisted of one pair of blue jeans, one sweatshirt, ten food items, and one typewriter. Plaintiff testified that the personal property belonged to him, and acknowledged the same to Officer Harper. Plaintiff denied knowledge of the contraband.

After discovering the contraband in the package addressed to plaintiff, Officer Harper investigated plaintiff's recent telephone conversations. Harper discovered that plaintiff had spoken with his mother a few weeks before the package arrived. In this conversation, plaintiff's mother told plaintiff that the box had been sent that day. Further investigation revealed telephone conversations in the prior month between plaintiff and his mother, and plaintiff and two other individuals, and all of these conversations involved discussions of sending plaintiff a box with "those thangs [sic]" and "those eight and those four other things." (ECF No. 44 at 7.) Plaintiff's mother also confirmed to him that the typewriter was in the box. Plaintiff also discussed with one of his contacts a mailing label that plaintiff had sent to him.

Based on his 23 years of training and experience as a correctional officer, Officer Harper determined that plaintiff was directly involved in a plan to introduce, into DVI, cell phones and tobacco, all of which are contraband. Plaintiff was issued a rules violation report ("RVR") for "Introduction of Dangerous Contraband to a State Prison-Possession of Cell Phones" (log number DVI-12-01-89-Pwas). (ECF No. 44 at 6.) Plaintiff was assigned a staff assistant, who read the charges and the RVR to plaintiff. However, the RVR was ordered re-issued and re-heard because plaintiff was not afforded a copy of the CDCR 115A form.

The re-issued RVR was given a new log number, 12-03-35-P-R, and was the same as the previous RVR, except for the introduction explaining the reissuance.

An inmate is assigned a staff assistant under state regulations if his or her test score for literacy is below 4.0. Plaintiff's previous literacy test scores were "messed up," but subsequently were "corrected." (Pl.'s Depo. at 40, 43, 58.) Plaintiff's current test score for literacy is 12.9.

////

For the re-issued RVR, plaintiff was assigned a new staff assistant, defendant Officer Cano, who completed the Staff Assistant Assignment form and dated it March 21, 2012. Plaintiff was provided with the RVR documents on March 21, 2012. Plaintiff did not ask defendant Cano for any assistance before the hearing, although plaintiff saw defendant Cano every day. Plaintiff prepared for his RVR hearing at the law library, and fellow inmates at the law library and on the yard assisted him in preparing for the hearing. The inmates assisting plaintiff with the hearing pointed out various applicable regulations and quoted policies and code violations to assist him. Plaintiff sorted through the documents for the RVR hearing, and when asked at his deposition if he had read the documents, he replied, "that's what I get the staff assistant for . . . it ain't my job. . . ." (Pl.'s Depo. at 49.) Plaintiff admitted that he received at least 24 hours' notice of the charges and the hearing on the RVR.

The hearing on plaintiff's RVR took place on April 3, 2012. Defendant Vivero was the Senior Hearing Officer, and defendant Cano was present as plaintiff's staff assistant. During the RVR hearing, defendant Vivero explained the charges to plaintiff. Defendant Cano sat next to plaintiff during the RVR hearing and was available to assist plaintiff if asked. Plaintiff did not ask defendant Cano any questions or seek any assistance from him at the RVR hearing. Plaintiff was prepared for the RVR hearing; he had prepared a written rebuttal to the charges that was several pages long, and he had several books and a large amount of paperwork with him at the RVR hearing. Plaintiff had an opportunity speak at the RVR hearing, and he did so. During the RVR hearing, plaintiff stated that he was not present when the package was opened, which he argued violated prison regulations. Plaintiff further argued that because he never had access to the alleged contraband, he could not have "receive[d]" it. (Pl.'s Depo. at 134.) Plaintiff submitted the Mainline property inventory sheet into evidence as part of his defense. Plaintiff prepared a list of defects in the incident investigation and charge against him and submitted this list to defendant Vivero. Plaintiff prepared and submitted questions and statements regarding Officer Languerand into evidence, which defendant Vivero accepted. Officer Harper was called as a witness and plaintiff prepared and submitted questions for him, which defendant Vivero posed to Officer Harper. Plaintiff was able to prepare and present his defenses to the RVR

charge. (Pl.'s Depo. at 101, 103-04, 105, 106, 128, 129.)

Plaintiff requested that Officer Languerand, the R&R officer who initially received the suspicious package and prepared the Mainline property inventory sheet, be present at the RVR hearing. Defendant Vivero declined to call Officer Languerand because Languerand's role in the investigation was documented on the inventory sheet, which was admitted into evidence. Defendant Vivero determined that Languerand would not have additional information to add to the hearing, and attending the hearing pulls the officers away from their duties.

Plaintiff also requested that Correctional Captain A. Rodriguez, Correctional Officer Y. Montgomery, and the appeals coordinator be called as witnesses. (ECF No. 44 at 10.) Defendant Vivero declined to call these three as witnesses because they were not present during the violation. (ECF No. 44 at 10.)

Plaintiff understood that he was found guilty of the RVR charge. (Pl.'s Depo. at 122.) Plaintiff received, from defendant Vivero, a written statement of the findings against plaintiff and the evidence relied upon. (Pl.'s Depo. at 118.)

In his deposition, plaintiff confirmed that his claim against defendant Cano is that Cano did not comply with the Title 15 requirements of a staff assistant. (Pl.'s Depo. at 41, 117, 120.) Plaintiff sought to have defendant Cano act in the role of counsel by: "preparing a way to defend" him and "lay[ing] out a presentation." (Pl.'s Depo. at 51, 52.) During his deposition, plaintiff did not identify any documentary evidence that he was unable to submit or any defense that he was unable to present during the RVR hearing. (Pl.'s Depo. at 113, 125.) Plaintiff did not identify anything that he was prevented from telling defendant Vivero at the RVR hearing. (Pl.'s Depo. at 132.) Plaintiff testified only that he was prevented from interacting with Officer Languerand at the RVR hearing, that as a matter of "fairness" he was deprived of the ability to ask Languerand "some basic questions." (Pl.'s Depo. at 116, 132.) Plaintiff testified that his due process rights were violated by defendant Cano because plaintiff was unable to present the evidence of "the total role that Officer Languerand played . . . in this whole process." (Pl.'s Depo. at 135.) Defendant Cano did not have the authority to call witnesses to the RVR hearing. Plaintiff admitted that defendant Cano did not act maliciously toward him; only that plaintiff

challenged the staff assistant process. (Pl.'s Depo. at 23, 47, 66.)

Further, at his deposition, plaintiff stated that his sole claim against defendant Vivero is that Vivero declined to call Officer Languerand as a witness during the RVR hearing. (Pl.'s Depo. at 89, 113.) Plaintiff claimed that there was a conflict between Officer Languerand completing the Mainline Personal Property Inventory sheet and Officer Harper searching the package and discovering the package. (Pl.'s Depo. at 98-100.)

VI. Plaintiff's Due Process Claims

    A. Applicable Legal Principles

It is well established that inmates subjected to prison disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has noted that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

An inmate is entitled to no less than 24 hours' advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. See Wolff, 418 U.S. at 563. The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571. In the prison disciplinary hearing context, an inmate does not have a right to counsel, retained or appointed, although illiterate inmates are entitled to assistance. Id. at 570.

An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. See also Ponte v. Real, 471 U.S. 491, 495 (1985). Prison officials may also refuse to call witnesses for "irrelevance" or "lack of necessity." Id. The burden of proving adequate justification for denial of a request to present witnesses rests with the prison officials. Bostic v. Carlson, 884 F.2d 1267, 1273 (9th Cir. 1989). However, as a general rule, inmates "have no constitutional right to confront and cross-examine

8

adverse witnesses" in prison disciplinary hearings. Ponte, 471 U.S. at 510 (Marshall, J., dissenting). See also Baxter v. Palmigiano, 425 U.S. 308, 322-23 (1976) ("Mandating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeals to judges, effectively preempts the area that Wolff left to the sound discretion of prison officials.")

The decision rendered on a prison disciplinary charge must be supported by "some evidence" in the record. Hill, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." Id. at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). Indeed, in examining the record of a prison disciplinary conviction, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. Hill, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. Toussaint, 801 F.2d at 1105.

In identifying the safeguards required in the context of prison disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at 560-63; see also Baxter, 425 U.S. at 324. The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228

(1990).

B. <u>Analysis</u>

As set forth above, <u>Wolff</u> established five procedural protections required by the federal constitutional guarantee of due process for inmates facing disciplinary proceedings: (1) adequate written notice of the charges, (2) receipt of the written notice at least twenty-four hours before the hearing, (3) ability to present documentary evidence and call witnesses unless doing so will be "unduly hazardous to institutional safety or correctional goals," (4) the factfinder must make a written statement of the evidence relied upon and the reasons behind the disciplinary action, and (5) assistance from a fellow inmate or staff member if the inmate is illiterate or the issues are complex. <u>Wolff</u>, 418 U.S. at 566-70. Here, the undisputed facts show that plaintiff was afforded the procedural protections under <u>Wolff</u>, as explained below.

1. <u>Adequate Written Notice of the Charges</u>

It is undisputed that plaintiff received adequate written notice. At his deposition, plaintiff admitted that he was given the RVR, the Staff Assistant Assignment form, and other related documents, prior to the hearing. (Pl.'s Depo. at 47-49, 123.) The RVR sets forth the charges levied against plaintiff, which satisfies the first <u>Wolff</u> requirement. (ECF No. 44 at 6.)

2. <u>Timely Receipt of the Written Notice</u>

In his deposition, plaintiff confirmed that he received the RVR on the same day he received the Staff Assistant Assignment form. (Pl.'s Depo. at 49.) The Staff Assistant Assignment form and the RVR confirm that plaintiff was provided such documents on March 21, 2012. (ECF No. 44 at 6.) Thus, plaintiff was provided written notice of the charges more than 24 hours prior to the April 3, 2012 hearing. Moreover, at the disciplinary hearing, plaintiff acknowledged receipt of all non-confidential reports at least 24 hours prior to the hearing. (ECF No. 44 at 9.) Because plaintiff was given the RVR on March 21, 2012, he had a minimum of 13 days in which to prepare his defense, exceeding the second requirement of <u>Wolff</u>.

3. <u>Plaintiff's Ability to Present Documentary Evidence and Call Witnesses</u>

In his pleading, plaintiff claimed that Rodriguez was a "critical witness" because he would "make clear that it is mandatory to clear certain actions relating to searches with a captain or

10

1    above." (ECF No. 14 at 4.)  Also, plaintiff alleged that Officer Languerand was required to

2    testify that he submitted a document stating that he had inventoried the package, "and never

3    mentioned one word of any contraband being inside." (ECF No. 52 at 3.)  Plaintiff argues that

4    Languerand's testimony would support plaintiff's "chain of custody" defense; that is, if two

5    officers provide conflicting reports, "someone is lying, covering up, or tampering with evidence."

6    (ECF No. 52 at 4.)  Plaintiff contends that Languerand had to explain his signed document.  (Id.)

7          The right to call witnesses at a disciplinary hearing is not absolute.  Wolff gives prison

8    officials flexibility to keep the hearing within reasonable limits and allows them to refuse to call

9    witnesses when doing so would risk reprisal or undermine authority, or when the evidence would

10   be irrelevant, unnecessary, or hazardous.  Wolff, 418 U.S. at 566.  "[T]he right to call witnesses

11   [is] a limited one, available to the inmate 'when permitting him to do so will not be unduly

12   hazardous to institutional safety or correctional goals.'"  Ponte, 471 U.S. at 499 (quoting Wolff,

13   418 U.S. at 566); see also Pannell v. McBride, 306 F.3d 499, 503 (7th Cir. 2002) ("[P]risoners do

14   not have the right to call witnesses whose testimony would be irrelevant, repetitive, or

15   unnecessary.")  Given these limitations, the Supreme Court has observed that a constitutional

16   challenge to a prison official's refusal to allow an inmate to call witnesses may "rarely, if ever, be

17   successful." Ponte, 471 U.S. at 499.  Nevertheless, when prison officials refuse to call witnesses

18   requested by a prisoner at a disciplinary hearing, they must explain their reasons, either as part of

19   the administrative record or by later testimony in court.  Id. at 497.

20         Here, it was not arbitrary or unreasonable for defendant Vivero to decline to call Officer

21   Rodriguez as a witness because he was not present during the violation.  Officer Rodriguez had

22   no direct testimony concerning the package, and was not present when it was opened.

23   See, e.g., Davis v. Sherman, 2015 WL 737967, **3-4 (E.D. Cal. Feb. 20, 2015) (concluding that

24   the decision to disallow an inmate from calling inmate witnesses because their potential

25   testimonies was irrelevant to the determination of guilt at a disciplinary hearing was reasonable

26   and did not state a due process violation); McAfee v. Curry, 2011 WL 2912876, *12 (N.D. Cal.

27   July 20, 2011) (concluding that "[n]o reasonable jury could find a due process violation based on

28   the failure to call a witness who had no relevant information"), aff'd by McAfee v. Rivero, 491

Fed. Appx. 826 (9th Cir. 2012) (unpublished memorandum disposition).

As to Officer Languerand, it is undisputed that defendant Vivero declined to call Officer Languerand because his role was documented in the Mainline property inventory sheet which was submitted as evidence in support of plaintiff's defense at the RVR hearing. (Pl.'s Depo. at 85, 86.) Defendant Vivero declared that it interferes with correctional goals to call witnesses who have no additional information to provide, because attending the hearing pulls them away from their duties. In addition to the inventory sheet, plaintiff prepared and submitted questions and statements regarding Officer Languerand into evidence, which defendant Vivero accepted.

Because the inventory sheet supported plaintiff's position that Languerand's inventory sheet differed from Officer Harper's report, no additional testimony was required. Plaintiff argues that he needed Languerand to explain his signed inventory sheet. (ECF No. 52 at 3-4.) However, in his deposition, plaintiff identified no additional testimony that Languerand would have offered in support of plaintiff's claim of innocence. See Piggie v. Cotton, 344 F.3d 674, 677 (7th Cir. 2003) (inmates have no right at disciplinary hearings to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary). In his deposition, plaintiff stated that he believed Languerand received the package, then summoned Harper, and, because the contraband was not mentioned on Languerand's form, an unidentified individual could have placed the contraband in the package between the time Languerand received the package and Harper arrived and searched the package. (Pl.'s Depo. at 98, 101.) However, because Languerand's form was admitted into evidence, with no mention of the contraband, there was an evidentiary basis for plaintiff to make his argument concerning the alleged conflict between the two forms.[2] Thus, plaintiff was not deprived of his ability to present such a defense by defendant Vivero's refusal to call Languerand as a witness.

////

---

[2] Defendants argue that there was no conflict. Because the ISU was summoned to DVI R&R to investigate a suspicious package, and it was the ISU's detailed search that discovered the hidden contraband, the contents inventory sheet in no way contradicts Officer Harper's report. Importantly, plaintiff's claim that he had no knowledge of the contraband was contradicted by the recorded telephone conversations in which he participated.

12

Accordingly, the evidence shows no triable issue of material fact as to whether there was a violation of due process rights stemming from defendant Vivero's refusal to call Officer Rodriguez or Officer Languerand as witnesses. Rather, the record reflects that the third requirement of Wolff was met.

4. Plaintiff Given Written Statement Following Disciplinary Action

In his deposition, plaintiff confirmed that he received a written statement of the findings against him and the evidence relied upon in finding him guilty of introduction of dangerous contraband to a state prison -- possession of cell phones. (Pl.'s Depo. at 118.) This written statement meets the fourth requirement of Wolff.

5. Assistance from a Fellow Inmate or Staff Member

Finally, in Wolff, the United States Supreme Court held that there is no right to counsel in a prison disciplinary hearing, but where an inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." 418 U.S. at 570.

Here, the issue was not complex. Plaintiff was charged with introducing contraband that was discovered in a package addressed to him, and the guilty finding was partially based on recordings of telephone conversations plaintiff had with his mother and other individuals. Thus, the evidence was limited and the issue was not complex.

Second, plaintiff sought and received assistance from his fellow inmates. In his deposition, plaintiff testified that he prepared for his RVR hearing in the law library, and received assistance from his fellow inmates at the law library and on the yard. (Pl.'s Depo. at 126.) These fellow inmates pointed out various applicable regulations and quoted policies and code violations to assist plaintiff. (Id.) It is undisputed that plaintiff defended himself at the hearing, and submitted evidence in support of his defense, including a written rebuttal and citations to applicable prison regulations.

////

13

But even if plaintiff had not received assistance from other inmates, he has failed to demonstrate that he was illiterate on March 21, 2012, such that he required staff assistance. In his pleading, plaintiff does not declare that he is illiterate. (ECF No. 14, *passim*.) Rather, he claims that he was entitled to a staff assistant due to his "level of comprehension" and "test score." (ECF No. 14 at 3.) Plaintiff provides a chrono reflecting completion of the M10 level TABE,[3] reflecting a reading score of 0.1, and math and language scores of 0.0. (ECF No. 14 at 6; 52 at 5.) However, defendants adduced evidence that on May 8, 2015, plaintiff's TABE test score for literacy was 12.9, and that a score of 12.9 demonstrates that plaintiff can read and understand at a high level. (ECF No. 44 at 2, 19.) In opposition, plaintiff contends that the May 2015 test score is new, and that under the old test score, issued August 9, 2011, plaintiff was entitled to a staff assistant. (ECF No. 52 at 5.) However, such a test score may entitle plaintiff to a staff assistant under California prison regulations, but it does not, without more, demonstrate that plaintiff was illiterate as required under Wolff. In his deposition, plaintiff testified that his previous literacy test scores were "messed up," but were subsequently "corrected." (Pl.'s Depo. at 40, 43, 58.) This testimony suggests that the 2011 low test scores were incorrect. Also, plaintiff did not testify that he was illiterate, but rather that he "was having a harder time processing some information." (Pl.'s Depo. at 43.) Such difficulty does not demonstrate that plaintiff was illiterate, that is, that he could not read or write on April 3, 2012.

In addition, the record reflects that plaintiff posed cogent questions during the RVR hearing, and cited relevant prison regulations. Indeed, during the hearing, defendant Vivero noted that plaintiff "was able to read without difficulty as well as provide clear articulate answers while presenting his defense." (ECF No. 44 at 9.) Importantly, the Supreme Court contemplated the provision of staff assistance when it was "unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." Wolff, 418 U.S. at

---

[3] TABE stands for "Test of Adult Basic Education," which measures an inmate's ability to understand and participate in the disciplinary process. See Cal. Code Regs., tit. 15, § 3000 (defining "effective communication"). When an inmate has a TABE score of 4.0 or below, prison staff must assess whether the inmate requires a Staff Assistant. Id.

569-70. Here, as argued by defendants, the record reflects that plaintiff was able to collect and present the necessary evidence. (Pl.'s Depo. at 50, 85, 86, 96, 103-04, 105-06, 108-09, 113, 126-29, 132-33, 134.)[4]

For all of these reasons, the court finds that the fifth requirement of Wolff was met.

Plaintiff strenuously argues that he did not receive any assistance from assigned staff assistant defendant Cano, that Cano never met with plaintiff or helped plaintiff prepare for the RVR hearing, all in violation of the mandatory requirements of Title 15. (ECF No. 14 at 3, 8; Pl.'s Depo. at 41, 117, 120.) Defendant Cano has no recollection of the specific incident, but declares that as a unit officer in plaintiff's unit, he saw plaintiff every day, and did not recall plaintiff ever asking Cano for any assistance in preparing for the RVR hearing. (ECF No. 45 at 2.) Defendant Cano declared he was present during the RVR hearing, seated next to plaintiff and available to provide him assistance, but that plaintiff did not ask Cano any questions or seek any assistance from him. (Id.)

In California, prisoners receive more procedural protections than those mandated by Wolff, and may receive the assistance of investigative employees or staff assistants in certain other circumstances. See Cal. Code Regs. tit. 15 § 3315(d)(1). It is undisputed that plaintiff was assigned a staff assistant, who appeared at the RVR hearing with plaintiff. Plaintiff claims that his federal due process rights were violated when he did not receive the assistance required under Title 15 from defendant Cano. But plaintiff does not claim that he was illiterate or unable to understand the issues due to their complexity, the reasons recognized by Wolff. Thus, plaintiff's allegations concerning the nature of the assistance provided fail to raise a federal due process claim. See Trujillo v. Vaughn, 269 Fed. Appx. 673, 674 (9th Cir. 2008) (rejecting federal due

---

[4] Review of the instant record also reflects that plaintiff is not illiterate. Plaintiff initially filed his civil rights complaint in the San Joaquin County Superior Court on August 23, 2013. (ECF No. 1-2 at 2.) His pro se typewritten complaint was composed of complete sentences, cited legal authority to support his allegations, used myriad three-syllable words correctly, and appended relevant exhibits. (ECF No. 1-2.) His handwritten comments on one exhibit were legible, his words were used and spelled correctly, and he also used complete sentences. (ECF No. 1-2 at 14.) In addition, throughout this litigation, plaintiff has complied with court deadlines, filed oppositions to motions, and even sought injunctive relief.

process claim directed to investigative employee's alleged failure to assist prisoner because "the assignment of an investigative employee under Cal. Code Regs. tit. 15 § 3315(d)(1) does not equate to a determination that he had a federal due process right to such assistance pursuant to Wolff."); Miller v. Duckworth, 963 F.2d 1002, 1004 (7th Cir. 1992) (rejecting inmate's claim that he was entitled to lay assistance for reasons other than illiteracy or the complexity of the case because "there is no basis for expanding the limited role of lay advocate assistance for prison inmates beyond that recognized in Wolff" ); see generally Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (federal due process is not implicated when prison officials fail to comply with state procedural protections that are more generous than those mandated by Wolff ), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 483-84 (1995).[5]

Finally, plaintiff's reliance on California Penal Code § 134 "Preparing False Evidence" (ECF No. 52 at 10) is unavailing. California's Penal Code is a criminal statute that does not create private rights of action, and violations of criminal statutes cannot serve as a basis for civil liability. See Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir. 1999) (affirming dismissal of sixteen causes of action predicated on violations of the California Penal Code "[b]ecause these code sections do not create enforceable individual rights.").

      6. "Some Evidence"

The record reflects that the disciplinary conviction was supported by sufficient evidence in light of the minimally stringent nature of that standard of proof. It is not the duty of this court to act as the hearing officer and re-determine the nature of plaintiff's offenses and punishment. See Hill, 472 U.S. at 455. As noted above, this court may not independently assess the credibility of witnesses or re-weigh the evidence in determining whether "some evidence" supports a prison disciplinary conviction. Hill, 472 U.S. at 455. The result of a prison disciplinary proceeding will be overturned by a federal court "only where there is no evidence whatsoever to support the

---

[5] However, that plaintiff's allegations do not rise to the level of a federal due process violation does not mean that the undersigned condones a staff assistant waiting for an inmate to seek assistance from the staff assistant. In this court's experience, staff assistants do not wait until the prisoner seeks assistance, but rather meets with the inmate prior to the hearing and helps the inmate prepare for the hearing, as contemplated by Cal. Code Regs. tit. 15, § 3318(b).

decision of the prison officials." Reeves v. Pettcox, 19 F.3d 1060, 1062 (5th Cir. 1994). Such is not the case here. The disciplinary hearing officer was entitled to rely on the allegations contained in the RVR, the testimony of Officer Harper concerning the discovery of the contraband, and his subsequent investigation into plaintiff's recorded telephone conversations, to find plaintiff guilty of the charged offense. See Bostic, 884 F.2d at 1273 (relying on staff's description of incident as some evidence for disciplinary charge).

### 7. Alleged Violation of State Regulations

To the extent plaintiff argues that certain procedural and/or substantive aspects of the California Code of Regulations were violated, such claim is not viable in this action. As explained above, the California regulations do not dictate the outcome of the federal due process analysis. The alleged failure of officials to follow state prison regulations and procedures does not state a federal civil rights violation under Section 1983. See e.g. Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997). In addition, Title 15 of the California Code of Regulations governing the conduct of prison officials does not entitle an inmate to sue for damages based on a violation of the regulations. See, e.g., Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal. 2012). ("There is no implied private right of action under title fifteen of the California Code of Regulations.") Therefore, to the extent that plaintiff alleges that defendant Cano failed to comply with the staff assistant regulations, such allegation fails to state a claim for relief.

### C. Qualified Immunity

In light of these findings, the undersigned declines to address defendants' alternative argument that they are entitled to qualified immunity.

## VII. Conclusion

In conclusion, the undersigned finds that plaintiff received all the process he was due under Wolff. Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 42) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 9, 2016

                KENDALL J. NEWMAN
                UNITED STATES MAGISTRATE JUDGE

/whee2526.msj